UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DARA TORRES, <br><br> Plaintiff, <br><br> v. <br><br> TOMMIE COPPER INC., <br><br> Defendant. | Civil Action No. 15-13007 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Dara Torres, by and through her undersigned counsel, brings this action against Tommie Copper, Inc. for declaratory judgment, breach of contract, and breach of the implied covenant of good faith and fair dealing.  Plaintiff and Defendant entered into a brand agreement in 2013 that does not terminate until 2018.  Plaintiff has fully performed and continues to perform all of her obligations under the agreement.  But Defendant has recently claimed that Plaintiff is in breach of the agreement's exclusivity clause and improperly refuses to compensate Plaintiff as required under the agreement.  In support thereof, Plaintiff alleges as follows:

### The Parties

1. Plaintiff Dara Torres ("Torres") is an internationally known and renowned competitive swimmer and has competed for the United States in five Olympic Games, winning twelve Olympic medals over the course of her career.  Torres is also an author, commentator, and brand representative, focusing on health, fitness, and wellness.  She is a citizen of, and resides in, Massachusetts.

1

2. Upon information and belief, Tommie Copper, Inc. (hereinafter, "Defendant" or "TC") is a New York corporation with its principal place of business in Mount Kisco, New York, in the County of Westchester. Defendant develops, manufactures, markets, and sells "copper-infused" athletic apparel, including sleeves, tops, compression socks, and gloves, with the aim of aiding athletic performance and muscle recovery thereafter. Thomas Kallish ("Kallish") is the Founder, President, and Chief Executive Officer of TC.

### Jurisdiction & Venue

3. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because citizenship between the parties is diverse, and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over the Defendant under Massachusetts General Laws c. 223A, § 3 because the Defendant has transacted business in the Commonwealth of Massachusetts.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2).

### Facts

6. Torres and the Defendant entered into a Brand Ambassador Servicers Agreement (the "Agreement"), which became effective on September 13, 2013.

7. The Agreement provided that Torres would act as a brand ambassador for TC by, among other things, wearing TC's apparel at TC events or her own appearances, promoting TC's products, providing input on TC's apparel design, and participating in TC's marketing and social media projects.

8. The Agreement naturally terminates on September 30, 2018.

9. New York law governs the rights and obligations of the parties under the Agreement.

10. Under the Agreement, TC agreed to pay Torres four (4) quarterly payments of $75,000 each calendar year.

11. The Agreement included an exclusivity provision, providing that Torres was not to endorse any product involving sports performance or apparel, including "performance drugs."

12. The exclusivity provision, by its plain terms, does not apply to consumer goods.

13. As of this date, Torres has performed all of her obligations as set forth in the Agreement, and is not in breach of the Agreement's exclusivity clause.

14. Torres's performance under the Agreement includes, but is not limited to, the following photo and video shoots, charity, and marketing appearances that she made under the Agreement:

    (a) A 2013 meeting in New York;

    (b) A 2013 interview with Torres's husband in Massachusetts;

    (c) An October 2013 photo shoot;

    (d) An October 18, 2013 video filming in Massachusetts;

    (e) A December 17, 2013 holiday party in New York;

    (f) A February 21, 2014 photo shoot in New York City;

    (g) A Summer 2014 Tommie Cares Swim Event in Princeton, New Jersey;

    (h) A September 24-25, 2014 home rebuilding in Ohio; and

    (i) A June 23-24, 2015 charity golf tournament in New York.

15. Torres continues to list TC as one of her sponsors on her personal website[1] and continues to reference and promote TC and its products.[2]

16. As such, TC continues to profit off of Torres's performance under the Agreement.

17. Despite Torres's full performance under the Agreement, TC last made a quarterly payment to Torres in July 2015.

---

[1] See http://daratorres.com.
[2] See, e.g., https://twitter.com/daratorres.

18. On July 13, 2015, TC, through counsel, sent Torres a purported Massachusetts General Laws c. 93A demand letter, alleging that Torres was in breach of the exclusivity clause of the Agreement due to her brand involvement with Vestiage, Inc. ("Vestiage").

19. TC also claimed in the letter that it was not previously aware that Torres had entered into an agreement with Vestiage.

20. In the letter, TC stated that it intended to terminate the Agreement for cause and demand return of all payments made, and may also bring an action against Torres for, among other things, breach of contract.

21. Under the Agreement, TC owes, and has stated its intention not to pay, twelve (12) more quarterly payments of $75,000 until the natural termination of the Agreement in September 2018.

22. Torres's agreement with Vestiage is not in breach of the exclusivity clause of her Agreement with TC.

23. Torres entered into an Endorsement and Service Agreement with Vestiage ("Vestiage Agreement"), which became effective on June 1, 2013.

24. Vestiage, Inc. ("Vestiage") creates, markets, and distributes anti-aging skin care products, such as "Reluma," a facial skin care line, and "Monterey Bay Nutraceuticals," a line of natural anti-aging supplements, neither of which are "performance drugs."

25. The Vestiage Agreement runs from June 1, 2013 through December 31, 2016, and predated Torres's Agreement with TC.

26. The Vestiage Agreement provides that Torres would, among other things, promote Vestiage's products on social media, including her personal website.

27. Vestiage creates and markets consumer goods, such as skin care products and natural supplements, that are not subject to the TC Agreement's exclusivity clause.

28. Contrary to TC's July 13, 2015, purported c. 93A demand letter, TC knew as early as December 2013 (or, three months after the effective date of the TC Agreement in September 2013), and likely earlier than that date, that Torres had an agreement with Vestiage.

29. Specifically, on or about December 2, 2013, a representative of TC ("the TC representative") met with Torres's representative to discuss the TC Agreement and how to implement the Agreement.

30. The TC representative took contemporaneous notes of the meeting, which he later shared, via electronic mail that same day, with both Torres's representatives and TC President Thomas Kallish.

31. In those notes, the TC representative stated that TC had investigated or was going to investigate Torres's other brand partnerships (besides her partnership with TC) with the express aim of creating cross-brand product development and promotions between TC and those other brands.

32. The TC representative noted Torres's existing brand relationships, including her agreement with Vestiage.

33. The TC representative characterized Vestiage as a company that sells skin care dietary supplements.

34. As such, not only did TC - including its President - have knowledge of Torres's brand agreement with Vestiage as early as December 2013, it acknowledged and understood that Vestiage did not sell or market products that could be characterized as performance drugs or related to sports performance.

35. TC did not object to Torres's brand relationship with Vestiage but rather sought to leverage her relationship with Vestiage to benefit itself.

36. TC continues to use Torres's likeness and image in its marketing efforts to this date despite its stated intention to refuse to pay Torres, including, but not limited to, on its website[3] and YouTube page.[4]  For example, TC continues to list Torres as an Ambassador on its website, stating that "Tommie Copper Ambassador Dara Torres has competed in 5 Olympic Games, winning 12 medals and multiple records. Outside of the pool Dara is a motivational speaker, a NY Times best selling author and proud mother. She embodies the integrity, inspiration and spirit that best represent Tommie Copper." TC also continues to run commercials featuring Torres, including one on July 21, 2015.

## Count I

## Declaratory Judgment

37. Torres realleges and incorporates by reference the allegations contained in paragraphs 1 through 36.

38. A valid contract exists between Torres and Defendant which requires Defendant to pay one (1) more quarterly payment in 2015, four (4) quarterly payments in 2016, four (4) quarterly payments in 2017, and three (3) quarterly payments in 2018.

39. Torres has performed all of her obligations under the Agreement, is not in breach of the Agreement's exclusivity clause, and is owed twelve (12) more quarterly payments, totaling $900,000.

40. The Defendant takes the position that Torres has breached the Agreement's exclusivity agreement and refuses to compensate Torres as required under the Agreement.

41. As such, an actual controversy exists as to the rights and obligations of the parties under the Agreement.

---

[3] See http://www.tommiecopper.com/videos.
[4] See https://www.youtube.com/watch?v=oTaaGpjr6rE.

## Count II

### Breach of Contract

42. Torres realleges and incorporates by reference the allegations contained in paragraphs 1 through 41.

43. A valid contract exists between Torres and TC, namely, the September 2013 Agreement.

44. Torres has fully performed her obligations under the Agreement.

45. TC has breached the Agreement by refusing to pay compensation owed to Torres while still continuing to use Torres's likeness and image on its website and in other marketing efforts, thereby profiting off of Torres's full performance without performing itself.

46. Torres is owed $900,000 on the remaining years of the Agreement but TC refuses to pay this compensation.

47. As such, Torres has suffered $900,000 in damages directly caused by TC's refusal and failure to comply with its obligations under the Agreement.

## Count III

### Breach of the Implied Covenant of Good Faith and Fair Dealing

48. Torres realleges and incorporates by reference the allegations contained in paragraphs 1 through 47.

49. A valid contract exists between Torres and TC, namely, the September 2013 Agreement.

50. Torres has fully performed under the Agreement.

51. TC refuses to perform its obligations under the Agreement, namely, compensating Torres for the remainder of the Agreement until September 2018, despite having no valid and lawful reason to do so.

52. TC has breached the implied covenant of good faith and fair dealing by refusing to pay Torres what is rightfully owed to her under the Agreement and by threatening Torres with suit despite its failure to perform its obligations.

53. TC seeks to continue to benefit from Torres's role as an ambassador while not fulfilling its own obligations under the Agreement.

54. As such, TC has destroyed or injured Torres's right to the fruits of the Agreement, namely, the compensation that is due and payable to her, and failed to perform its obligations under the Agreement in good faith.

WHEREFORE, Torres requests the following relief:

1. A declaration that Torres is not in breach of Agreement's exclusivity provision;
2. A declaration that TC's refusal to compensate Torres for her performance under the Agreement, as required by the Agreement, constitutes a breach thereof;
3. A determination that Torres is entitled to damages, pre-judgment and post-judgment interest, and costs;
4. A final judgment against TC for damages, pre-judgment and post-judgment interest, and costs suffered under Counts II and III;
5. Such other and further relief this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

[*Signatures on Next Page*]

                Respectfully submitted,

                Dara Torres,

                By her attorneys,

                /s/ Patrick T. Clendenen
                Patrick T. Clendenen (BBO# 564165)
                Patrick.clendenden@nelsonmullins.com
                Christine M. Kingston (BBO# 682962)
                Christine.kingston@nelsonmullins.com
                Nelson Mullins Riley & Scarborough LLP
                One Post Office Square, 30th Floor
                Boston, Massachusetts 02109
                p. (202) 712-2800
Dated: July 23, 2015        f. (202) 712-2860